UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRUCE FALCONER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 05-42-B-W |
| | ) |
| PENN MARITIME, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTIONS IN LIMINE**

Plaintiff filed a motion in limine to exclude evidence of his prior receipt of maintenance and cure benefits and Social Security Disability and Medicare benefits, and to prevent Defendant from offering expert testimony on the issue of liability. Defendant moves in limine to allow the introduction of evidence of Plaintiff's prior receipt of Social Security Disability and Medicare benefits. This Court denies Plaintiff's request to exclude evidence of maintenance and cure benefits, but grants Plaintiff's request to exclude evidence of prior receipt of Social Security Disability and Medicare. Correspondingly, Defendant's motion is denied. This Court grants Plaintiff's expert testimony motion, except as to lay opinion testimony.

**I. Discussion**

**a. Plaintiff's Receipt of Maintenance and Cure Benefits**

Mr. Falconer moves in limine arguing that his prior receipt of maintenance and cure benefits is inadmissible, since he never asserted a claim against the Defendant for maintenance and cure and is not seeking recovery on that basis. He seeks an order precluding Penn Maritime from introducing evidence of maintenance and cure benefits.

*Pl.'s Mot. in Limine re Pl.'s Receipt of Maintenance and Cure Benefits* (Docket # 35). Defendant responds that Plaintiff has not identified which benefits he considers "maintenance and cure" and which are advance payments of claimed damages. Since maintenance and cure extends only until the condition or disability is incurable, any further payments, Defendant reasons, must satisfy part of Plaintiff's claim for compensatory damages.[1] *Def.'s Resp. to Pl.'s Mot. in Limine re Pl.'s. Receipt of Maintenance and Cure Benefits* (Docket # 45).

Under the Jones Act, the obligation to provide maintenance and cure is, unlike negligence, not based on fault and is separate from and supplemental to compensatory damages. *Pacific S.S. Co. v. Peterson*, 278 U.S. 130, 137-38 (1928); *Muise v. Abbott*, 160 F.2d 590, 592 (1st Cir. 1947). However, care should be taken to avoid a windfall for the Plaintiff. It does not follow that a "particular item of his claim, such as maintenance, if recovered in one suit, may again be recovered in another. In admiralty as elsewhere, a litigant may not recover compensation for a single claim more than once." *McCarthy v. American Eastern Corp.,* 175 F.2d 727, 729 (3d Cir. 1949); *Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 915-916 (2d Cir. 1960); *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 20 (1963)("This Court has held that recovery of maintenance and cure does not bar a subsequent action under the Jones Act…but of course, where such closely related claims are submitted…questions of *res judiciata* and collateral estoppel necessarily arise, particularly in connection with efforts to avoid duplication of

---

[1] Defendant also notes that there are affirmative defenses that apply to advance payments of damages, but not to maintenance and cure, i.e. contributory negligence, and argues that "if at the close of evidence, there has been no proof on the issue of when Penn's cure obligation stopped, plaintiff will claim defendant failed to establish what medical expenses reflected its cure obligation and thereby cannot obtain a reduction for whatever percentage the jury finds plaintiff to have been contributorily negligent." *Def.'s Resp. to Pl.'s Mot. in Limine re Pl.'s Receipt of Maintenance and Cure Benefits* at 3.

damages"); *Lafontaine v. The G.M. McAllister et al.,* 101 F. Supp. 826, 829 (S.D.N.Y. 1951)("The damages recoverable in an action based either on negligence under the Jones Act or on unseaworthiness under the general maritime law overlap to some extent those sought in an action for maintenance and cure.").

When "a seaman's 'condition has stabilized and further progress ended short of a full recovery, the seaman… is no longer entitled to maintenance and cure.'" *Whitman v. Miles,* 387 F.3d 68, 71 (1st Cir. 2004)(quoting *In re RJF Int'l Corp.,* 354 F.3d 104, 106 (1st Cir. 2004)). This point is known as the seaman's "maximum medical recovery." *Id.* To allow Plaintiff to claim that Defendant's payments past the point of maximum medical recovery were part of "maintenance and cure" rather than pre-payment of damages would be to allow Plaintiff a bonus recovery. Policy, however, dictates that Defendant bear the burden of proof on this issue. *Bartholomew,* 279 F.2d at 916. Evidence of maintenance and cure damages will be strictly limited to two questions: (1) if and when the "fuzzy boundary between improvement and palliation", *RJF,* 354 F.3d at 107, was crossed; and, (2) whether Penn Maritime's payments were in fact prepayment of damages.[2] Mr. Falconer's motion in limine to exclude evidence of maintenance and cure payments is DENIED.

### b. Plaintiff's Receipt of Social Security and Medicare Benefits

Arguing that Social Security Disability and Medicare benefits are subject to the collateral source rule and inadmissible, Mr. Falconer moves in limine to exclude evidence of his receipt of these benefits. *Pl.'s Mot. in Limine Regarding Pl.'s Receipt of Collateral Benefits* (Docket # 36). In turn, Penn Maritime argues, both in response and in

---

[2] Penn Maritime suggests the parties stipulate as to when its maintenance and cure obligation ended. *Def.'s Response* at 3. This would be one means to avoid unnecessary wrangling about an issue that seems amenable to resolution.

its own motion, that there is no per se rule excluding collateral source evidence, and it seeks to introduce evidence of these benefits to offset its maintenance and cure obligation as well as "for any permissible use, such as proving lack of motivation for returning to work". *Def.'s Mot. in Limine* at 8 (Docket # 43); *Def.'s Resp. to Pl.'s Mot. in Limine Regarding Pl.'s Receipt of Collateral Benefits* at 3 (Docket # 46).

### 1. Offset

Penn Maritime argues that Mr. Falconer's receipt of Social Security Disability Income (SSDI) benefits and eligibility for Medicare benefits should be admissible "as proof that Penn [Maritime] does not owe plaintiff maintenance and cure" and to offset "defendant's maintenance and cure obligation to plaintiff". *Def.'s Mot. in Limine* at 8, 10. Penn Maritime's argument is rather cryptic and difficult to parse. But, as framed, this Court will not allow Penn Maritime to introduce evidence of Mr. Falconer's receipt of Medicare and Social Security benefits to gain an offset. Although Penn Maritime's obligation for maintenance and cure may overlap with Medicare and SSDI benefits, Mr. Falconer has not asserted a claim against Penn Maritime for maintenance and cure benefits in this law suit and, therefore, the issue is not joined. *See Pl.'s Resp. in Opp'n to Def.'s Mot. in Limine Regarding Pl.'s Receipt of Collateral Benefits* at 2 (Docket # 53)("…there is no claim by Plaintiff for Defendant improperly and untimely cutting Plaintiff off from maintenance and cure.").

Elsewhere, however, Defendant suggests that its real purpose is to prevent Plaintiff from obtaining an award for lost wages and medical expenses on the erroneous premise that he has not received such benefits and will not continue to receive them in the future. *Def.'s Mot. in Limine* at 8-9. The parties have not provided sufficient information

4

to allow a final determination of the issue; however, in *In re RJF Int'l Corp.,* 332 F. Supp. 2d 458, 464 (D.R.I. 2004), Judge Smith in a thorough and persuasive opinion set forth the analytic method this Court will follow.  This Court remains to be convinced that Medicare is the functional equivalent to the "cost-free" care once provided seamen in the Public Health Service.  For the reasons well expressed in *RJF,* it is more likely the Medicare Secondary Payer provisions of federal law, 42 U.S.C. § 1395y(b)(2), contemplate reimbursement, not an offset.  To the extent *Moran Towing & Transp. Co. v. Lombas*, 58 F.3d 24 (2d Cir. 1995) would work a different result, this Court declines to follow it.

However, this does not end the analysis, as in this case, Medicare and the union health plan have liens for past amounts paid in the event of any money received as a result of judgment or settlement.  *Pl.'s Resp. in Opp'n to Def.'s Mot. in Limine Regarding Pl.'s Receipt of Collateral Benefits* at 3.  In these circumstances, to allow Penn Maritime to encourage the jury to offset Mr. Falconer's recovery by taking into account his previous receipt of both SSDI benefits and maintenance and cure would not merely prevent a double recovery, but would allow a double deduction.  Penn Maritime may not introduce evidence of Mr. Falconer's receipt of SSDI and Medicare benefits to demonstrate that he is not entitled to damages for lost wages or past medical expenses.

**2. Motivation to Return to Work**

Under the collateral source rule, the Plaintiff need not offset his recovery from the Defendant by the amount of any benefits received from a source collateral to the Defendant, and evidence of such benefits should, therefore, not be permitted at trial.  *McGrath v. Consolidated Rail Corp.,* 136 F.3d 838, 840-41 (1st Cir. 1998).  The rule is

designed to prevent juries from improperly misusing evidence of collateral sources. However, every rule has its exceptions. In *McGrath*, the First Circuit upheld the trial court's allowance of collateral source evidence in order to show lack of motivation to go back to work – precisely the same purpose which Defendant intends. *Id.* On the other hand, in *Eichel v. New York Central Railroad Co.,* 375 U.S. 253 (1963), the Supreme Court found ample reason to uphold the district court's decision to exclude such evidence, finding that "insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice". *Id*. at 255. *See also McGrath,* 136 F.3d at 841; *De Medeiros v. Koehring Co.,* 709 F.2d 734, 741 (1st Cir. 1983)("Even in *Eichel*…the narrower question was simply whether or not to uphold the district court's discretionary ruling").

Consistent with *Eichel,* Plaintiff argues that evidence of malingering can come from witnesses, introduction of documents, or other less prejudicial material. He also asserts that if Plaintiff recovers any money, he will have to repay a lien to Medicare. Consequently, if this evidence is admitted, he faces the possibility of a double deduction – once from Medicare and again when the jury calculates his "real" damages. *Pl.'s Resp. in Opp'n to Def.'s Mot. in Limine Regarding Pl.'s Receipt of Collateral Benefits* at 3; *Pl.'s Mot. in Limine Regarding Pl.'s Receipt of Social Security and Medicare Benefits* at 3. Penn Maritime argues that the evidence should be admitted both on issues of motivation and credibility.

At this stage, this Court agrees with Mr. Falconer. Penn Maritime is free to introduce evidence, as it apparently intends to do, that Mr. Falconer is a college graduate with an engineering degree and is an excellent candidate for vocational training, that he is

not totally disabled and can and should be gainfully employed, that if he had received training, it is likely he would now be re-employed and earning wages consistent with his wages at Penn Maritime.  However, to introduce evidence that the reason he has not done so is his receipt of SSDI benefits would in this Court's view unnecessarily complicate the trial of this case with complex and tangential issues, would likely lead to juror confusion, would bear marginal relevance, and would be more prejudicial than probative.  Fed. R. Evid. 403.

This ruling is of course subject to the evidence at trial.  If Mr. Falconer opens the door, the evidence may become admissible.  *See McGrath,* 136 F.3d at 840-41; *Fitzgerald v. Expressway Sewerage Construction, Inc.,* 177 F.3d 71, 76 (1st Cir. 1999) (allowing collateral source evidence if the plaintiff opens the door, its relevance is plain, its probative value not outweighed by the danger of unfair prejudice and an immediate prophylactic instruction is given as to the limited use for which it was admitted); *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996) (holding collateral source evidence of payments admissible if the plaintiff puts financial status at issue); *Lange v. Missouri Pac. R.R. Co.*, 703 F.2d 322, 324 (8th Cir. 1983)(finding that "evidence concerning [the plaintiff's] receipt of workers' compensation benefits was relevant to test the credibility of plaintiff's assertion that he had to return to work immediately after the surgery because he had no disability income").

This Court DENIES Defendant's motion in limine to introduce such evidence and GRANTS Plaintiff's motion to exclude such evidence.

### c.  Preclusion of FRE 702 Expert Testimony on the Issue of Liability

7

Mr. Falconer's moves in limine seeking to prevent Penn Maritime from offering expert testimony on issues of liability (including negligence), since no expert witness has been designated and Penn Maritime has refused to allow him to conduct discovery regarding the opinions held by its employees who might qualify as experts. *Pl.'s Mot. in Limine to Preclude the Def. from Offering any F.R.E. 702 Expert Testimony on the Issue of Liability* (Docket # 38). In response, Penn Maritime argues that the proper avenue for relief would have been filing a Rule 37 motion, not waiting until the eve of trial and it argues that lay opinions can be offered by Captain Duplantis, who observed the accident. *Def.'s Resp. to Pl.'s Mot. in Limine to Bar Opinion Testimony from Lay Witnesses* (Docket # 44).

Whether Captain Duplantis and Mr. Carvalhiero can testify at all is easily resolved. To the extent they personally observed events leading up to the accident, Rule 701 permits them to testify to their opinions to the extent they are "rationally based" on their perceptions, helpful to a clear understanding of the determination of facts in issue, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701.

The question of expert testimony on the issue of liability is as easily resolved. On July 15, 2003, Judge Ellis approved an agreed-upon schedule of expert disclosure, including a requirement that Penn Maritime disclose its liability expert witnesses and serve liability expert reports on or before July 14, 2003. *Court Order Dated Jul. 15, 2003* at 2 (Docket # 38 – Ex. A). Penn Maritime has acknowledged it failed to designate expert witnesses on the issue of liability. *See Def.'s Resp. to Pl.'s Mot. in Limine to Bar Opinion Testimony from Lay Witnesses* at 1. During discovery, Mr. Falconer relied on the designation of Captain Duplantis and Mr. Carvalhiero as non-expert witnesses and

Penn Maritime instructed them not to respond to questions that could have elicited expert responses. *Pages from Depositions of Carvalhiero, Duplantis* (Docket # 38 – Ex. B, C).

The Plaintiff's Motion in Limine is DENIED to the extent it seeks to exclude lay opinion testimony allowed by 701, but is otherwise GRANTED.

## II.  Conclusion

This Court DENIES Mr. Falconer's motion in limine to exclude evidence of maintenance and cure payments (Docket # 35).  It GRANTS Plaintiff's motion in limine to exclude evidence of receipt of SSDI and Medicare benefits (Docket # 36) and DENIES Defendant's corresponding motion to introduce such evidence (Docket # 43).  Finally, this Court GRANTS Plaintiff's motion in limine to exclude expert testimony on the issue of liability, except to the extent it seeks to exclude lay opinion testimony (Docket # 38).

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of October, 2005.