## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRUCE FALCONER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-42-B-W |
| | ) | |
| PENN MARITIME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTIONS IN LIMINE</u>

Defendant filed a motion in limine to preclude the introduction of the marine casualty investigation report into evidence and to prevent the Plaintiff from referring to OSHA violations as establishing negligence per se.  Defendant also argues that post-accident evidence is inadmissible pursuant to Fed. R. Evid. 407.  Finally, Defendant requests that Plaintiff be barred, pursuant to Fed. R. Evid. 702 and Fed. R. Civ. P. 26, from questioning Defendant's experts about topics beyond areas of expertise.[1]  This Court grants Defendant's motions regarding the marine casualty report and negligence per se and denies the two remaining motions.

### I.   Discussion

#### a.  Exclusion of the Marine Casualty Investigation Report

Penn Maritime moves in limine to exclude from evidence the marine casualty investigation report based on the statutory prohibition set forth in 46 U.S.C. § 6308(a).  Mr. Falconer urges this Court to allow the admission of certain aspects of the

---

[1] Defendant also filed a motion in limine requesting that it be allowed to introduce evidence of Plaintiff's prior receipt of SSDI and Medicare benefits.  This motion was previously denied in this Court's order dated October 21, 2005.  *Order denying a portion of Defendant's Motion in Limine* (Docket # 94).

investigation report, based on a broader interpretation of the same statute.  This Court agrees with the Defendant and grants its motion in limine.

Following the accident, the United States Coast Guard performed an investigation and issued a report.  The report apparently contains photographs and notes of statements taken by the Coast Guard investigator.  Defendant argues that § 6308(a) precludes the admission of the entire Marine Casualty Investigation report; Mr. Falconer counters that the statute excludes only "finding of facts, opinions, recommendations, deliberations or conclusions".  He seeks to admit photographs taken and "possible notes of statements of the Coast Guard Investigator".  *Def.'s Mot. in Limine* at 2 (Docket # 43); *Pl.'s Resp. in Opp'n re Def.'s Mot. in Limine Regarding the Admissibility of the Coast Guard Marine Casualty Investigation Report* at 1-2 (Docket # 54).

The relevant statutory provision states:

"Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title…including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings." 46 U.S.C. § 6308(a).

The phrase "no part" excludes the entire report and the list of specifically excluded contents is "illustrative and not exclusive".  *In re Danos & Curole Marine Contractors, Inc.,* 278 F. Supp. 2d 783, 785 (E.D. La. 2003).  Nevertheless, there is authority that photographs and other "non-conclusory" items are admissible.  *Id.* ("the photographs do not provide findings of fact, opinions, recommendations, deliberations, nor conclusions,

instead, they merely illustrate the condition of the objects depicted in the photos as they existed…at the time the pictures were taken").

Although this Court is sympathetic with the argument that photographs attached to a Coast Guard investigatory report might assist the factfinder and do not directly implicate the Coast Guard investigation, it disagrees with *Danos & Curole,* because the language of the statute is clear and must control. The statute expressly prohibits the admission into evidence of any "part of the report" and Coast Guard photographs taken pursuant to its investigatory authority must be "part of the report". *See Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.,* No. 03-1230, 2004 U.S. Dist. LEXIS 6900, * 3 (E.D. La. April 20, 2004)("The content of report may not be introduced into evidence by any party or witness and <u>no portion of the report may be considered</u>.")(emphasis supplied)(citation omitted).

The statute's blanket prohibition avoids Coast Guard involvement in later civil proceedings, except as provided in § 6308(b).[2] If the photographs in the report are inadmissible under the statute, "possible notes of statements of the Coast Guard Investigator" are even more clearly inadmissible. Defendant's motion in limine to exclude the contents of the Coast Guard investigatory report, including photographs and notes, is GRANTED.

**b. Precluding Reference by Plaintiff to Negligence Per Se**

---

[2] For a description of the legislative history leading to the enactment of the blanket prohibition, see L. Lambert, Fourth Newport Symposium: "The Use of Evidence in Admiralty Proceedings", 34 J. Mar L. & Com. 75, 77-80 (2003). The advantage is that it keeps the Coast Guard investigation independent of and untainted by any civil litigation and keeps the Coast Guard out of civil disputes between private parties. Otherwise, members of the Coast Guard could be called as expert or foundational witnesses in civil litigation across the country, and, by using evidence from the report, the parties could invoke the imprimatur of the Coast Guard on their theory of the case. In any event, Congress has made a policy judgment, has spoken unequivocally, and it is this Court's duty to enforce the statute.

Defendant seeks to preclude the Plaintiff from referring to "negligence per se" or statutory violations, arguing that (a) Defendant is an uninspected vessel not governed by applicable Coast Guard regulations; (b) violations of OSHA regulations are admissible at trial only as evidence of the standard of care, and not as negligence per se; and, (c) such violations do not shift the burden of proof or bar a finding of contributory negligence. *Def.'s Mot. in Limine* at 3-5. In response, Plaintiff argues that propositions (b) and (c) are not the law in this Circuit. *Pl.'s Resp. in Opp'n. re Def.'s Mot. in Limine Regarding References to Negligence Per Se* (Docket # 51).

### 1. Negligence Per Se

In the Final Pre-Trial Order, Magistrate Judge Kravchuk described Mr. Falconer's claim in part as follows:

> "The plaintiff further asserts claims against the defendant on the basis of negligence per se arising from the defendant's violation of 29 CFR 1915.73, 46 CFR 92.25-15, and 46 CFR 108.217. The plaintiff claims that in light of the defendant's statutory violations, the defendant is not entitled to a reduction of damages on account of comparative fault as set forth in Sec. 53 of F.E.L.A. (as incorporated into the Jones Act.)."

*Final Pre-Trial Order* at 2 (Docket # 34).[3]  Penn Maritime argues that Mr. Falconer is not entitled to argue negligence per se[4] and that any damage award must be reduced by his comparative negligence.  Regarding Mr. Falconer's claim of a Coast Guard violation, Penn Maritime claims that because the VALIANT was an "uninspected vessel", Coast Guard regulations do not apply, except for certain immaterial matters.  He also states that although OSHA regulations are admissible as evidence of a violation of due care, an OSHA violation does not constitute negligence per se and would not bar the defense of comparative negligence.  Penn Maritime argues that the Jones Act "imposes comparative fault principles…", *Def.'s Mot. in Limine* at 3, and points to § 688 of the Jones Act, which incorporates a provision of the Federal Employers' Liability Act (FELA), requiring that damages be "diminished by the jury in proportion to the amount of negligence attributable to such employee…." 45 U.S.C. § 53.  In support, Penn Maritime cites the Second Circuit case of *Jones v. Spentonbush-Red Star Co.,* 155 F.3d 587 (2d Cir. 1998).

---

[3] 46 CFR 92.25-15 and 46 CFR 108.217 are Coast Guard Regulations.  Defendant has noted:
"The United States Coast Guard investigated plaintiff's accident, but did not accuse defendant of violating any of its regulation…Tug VALIANT, on which Falconer was working when injured…is an 'uninspected vessel' as opposed to an 'inspected vessel' subject to comprehensive Coast Guard Regulations.  Pursuant to Section 3301, uninspected vessels, such as VALIANT, are not subject to the Coast Guard's regulatory jurisdiction, other than with regard to basic firefighting equipment, life jackets and lifesaving equipment, and ventilation of bilge and fuel tanks.  The Coast Guard regulations plaintiff claims Penn violated are, therefore, inapplicable to VALIANT and to this case."
*Def.'s Mot. in Limine* at 4 (citations omitted).  Plaintiff failed to respond to the issue and has, therefore, waived objection.  *See Pl.'s Resp. in Opp'n. re Def.'s Mot. in Limine Regarding References to Negligence Per Se* at 1; *Pl.'s Trial Brief* at 2 (Docket # 79) (The VALIANT "is an uninspected towing vessel.  As such it is subject to regulation by OSHA."); *Fuller-McMahan v. City of Rockland,* No. 05-58, 2005 U.S. Dist. LEXIS 13956, * 26 (D. Me. July 12, 2005)("[Plaintiffs]… do not respond to the defendants' argument concerning their takings claim and that claim accordingly should be dismissed.").  This Court will only examine the effect of a violation of 29 CFR 1915.73, an OSHA regulation.
[4] Negligence per se "is based on the violation of a federal safety statute which in itself creates 'an actionable wrong, in no way dependent upon negligence.'" *Kelly v. Keystone Shipping Co.,* 281 F. Supp. 2d 313, 317 n.6 (D. Mass. 2003)(quoting *O'Donnell v. Elgin,* 338 U.S. 384 (1949)).

5

Plaintiff responds that the First Circuit has not adopted *Jones.* To the contrary, Mr. Falconer says that the First Circuit held in *Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir. 1985) that a violation of an OSHA regulation could be deemed negligence per se under FELA, and that contributory negligence will not apply.  *Id.* at 263-64, 267; *Pl.'s Resp. in Opp'n. re Def.'s Mot. in Limine Regarding References to Negligence Per Se* at 2-3.

The First Circuit itself, however, has characterized *Pratico* as "of questionable validity." *Elliot v. S.D. Warren Co.*, 134 F.3d 1, 4 (1st Cir. 1998).  Though it left for another day whether *Pratico* should be overruled, *Elliot* noted that when the First Circuit decided *Pratico,* it had "very little guidance from our sister circuits." *Id.* at 4.  Only the Fifth Circuit had addressed the issue. *Id.  See also Pratico*, 783 F.2d at 264 (citing, *inter alia, Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231 (5th Cir. Unit B 1982); *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir. Unit A 1981).  By 1998, when the First Circuit decided *Elliot,* three circuits had ruled that, because OSHA does not create a private right of action, "a violation of an OSHA regulation could never be equated with negligence per se." *Warren*, 134 F.3d at 4 (citing *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408 (9th Cir. 1994); *Ries v. Nat'l. R.R. Passenger Corp.*, 960 F.2d 1156 (3d Cir. 1992); *Albrecht v. Baltimore & Ohio R.R. Co.*, 808 F.2d 329 (4th Cir. 1987)).  The Sixth Circuit, like the Fifth, had left open "the possibility that a violation of an OSHA regulation may, in some cases governed by federal law, constitute negligence per se", but *Elliot* stated it was "rare in either circuit for a court to actually uphold a finding of negligence per se on that basis."  *Elliot,* 134 F.3d at 4 (citing *Ellis v. Chase Commc'ns., Inc.,*, 63 F.3d 473, 477 (6th Cir. 1995); *Rabon*, 672 F.2d at 1238).  Since *Elliot,* the

6

Second Circuit in *Jones* joined the Third, Fourth, and Ninth Circuits in concluding that an OSHA violation, although evidence of a lack of due care, is not negligence per se. 155 F.3d at 596.

    *Jones* devoted a large portion of its analysis to the analogy made in *Pratico* to *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958), in which the United States Supreme Court held that under the Jones Act, a violation of a navigational statute should result in absolute liability. *See Pratico*, 783 F.2d at 264; *Kernan*, 355 U.S. at 431. Echoing earlier concerns voiced in *Ries* regarding the extension of *Kernan*, the Second Circuit distinguished *Jones* on the basis that:

> "In contrast to the defendants in *Kernan*…[the defendant] did not violate a Coast Guard regulation or maritime statute. Instead, it violated an OSHA regulation. This distinction in the source of defendant's statutory duty is key…Unlike Coast Guard regulations and maritime statutes that are specifically aimed at shipping activities, [Defendant] relies on a general workplace safety regulation to attain the same results in a maritime context. We do not think it was Congress' purpose for the Occupational Safety and Health Act (the Act) to have such an all-encompassing effect."

155 F.3d at 595 (citing *Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S. 607, 641 (1980) (plurality opinion) ("[The Act] was not designed to require employers to provide absolutely risk-free workplaces")); *Ries,* 960 F.2d at 1163 ("Despite the expansive language of *Kernan*, the Supreme Court has never extended the statutory duty of care of a railroad employer beyond a few safety statutes specific to the railroad industry, and we are reluctant to imply such an extension in the absence of express guidance from the Court. Ries argues that *Kernan* allows a finding of negligence per se for a violation of a statute other than the Safety Appliance and Boiler Inspection Acts.

Although this is technically correct, *Kernan* was a maritime case, not a railroad case. It involved the imposition of a statutory duty of care established by a maritime regulation (a Coast Guard regulation) in a suit arising under a maritime statute (the Jones Act). The Court necessarily looked beyond the Safety Appliance and Boiler Inspection Acts, since those statutes established safety requirements for train appliances and boilers and were meaningless in the maritime context").

The doctrine of *stare decisis* "renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision", *Gately v. Massachusetts,* 2 F.3d 1221, 1226 (1st Cir. 1993), and *Pratico* remains the last time the First Circuit has ruled directly on the issue. Nevertheless, the First Circuit has said that "there may be occasions when courts can - - and should - - loosen the iron grip of *stare decisis.*" *United States v. Reveron Martinez,* 836 F.2d 684, 687 n.2 (1st Cir. 1988). Any such departure demands "special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212 (1984). This Court concludes that "special justification" exists here. The First Circuit itself has called *Pratico* "of questionable validity" and has suggested strongly that if presented with the same issue, it would join the growing majority of circuits and conclude that an OSHA violation does not constitute negligence per se.

As a practical matter, if this Court does not take the First Circuit's hint in *Elliot,* this case may well have to be retried. If Mr. Falconer presents evidence of a causative OSHA violation, the jury will be virtually compelled to conclude Penn Maritime was negligent. If Penn Maritime appeals and, as appears virtually inevitable, the First Circuit adopts the majority rule, it is likely the entire matter will be remanded to weigh the non-

8

conclusive impact of the OSHA violation.[5]   In this narrow circumstance, for reasons of judicial economy and in view of *Elliot*, this Court will apply the law *Elliot* presaged in 1998, not the law *Pratico* held in 1985.

### 2. Comparative Negligence

Penn Maritime also argues that an OSHA violation would not bar the defense of comparative negligence; Mr. Falconer argues it would.  Unlike its cautionary language on negligence per se, *Elliot* did not send a direct message about the *Pratico* holding on comparative negligence.

Section 53 of FELA, incorporated into the Jones Act, provides, in pertinent part:

"No such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

45 U.S.C. § 53.   If Mr. Falconer establishes that a Penn Maritime OSHA violation caused his injuries and if section 53 applies, it would appear to bar any comparative negligence defense.   Consistent with the Plaintiff's position, two recent District of Massachusetts courts rejected post-verdict motions to reduce damage awards based on the employee's comparative negligence.  *Martin v. Cape Fear, Inc.,* No. 99-10944, 2004 U.S. Dist. LEXIS 7722, * 8 (D. Mass. May 4, 2004); *Kelly v. Keystone Shipping Co.,* 281 F.Supp.2d 313, 319 (D. Mass. 2003).

On the other hand, if the First Circuit adopts *Jones* on negligence per se, it may also adopt its view of the impact of a violation of an OSHA regulation on comparative

---

[5] Of course, the obverse is true as well.  Mr. Falconer may appeal, relying on *Pratico.*  As this Court's ruling may be challenged either way, the odds do not favor the holding in a case the First Circuit itself has described as "of questionable validity."

negligence.  In *Jones,* the Second Circuit distinguished between a violation of a Coast Guard regulation and maritime statute and a violation of an OSHA regulation.  *Jones,* 155 F.3d at 595.  *Jones* concluded:  "We do not think it was Congress's purpose for the Occupational Safety and Health Act (the Act) to have such an all-encompassing effect." *Id.*  It cited § 653(b)(4) of OSHA, which provides that OSHA must not be construed to "supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees…arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).  *See Ries,* 960 F.2d at 1162 ("If a violation of an OSHA regulation could constitute negligence per se and bar contributory negligence under the FELA, it would be almost axiomatic that the effect would be to "enlarge or diminish or affect" the statutory duty or liability of the employer.").

Unlike negligence per se, which *Elliot* addressed directly, comparative negligence is not as easily subject to appellate prediction.  Nevertheless, the First Circuit in *Elliot* may have dropped a subtle analytic clue.  In noting that other circuits had held that OSHA did not create a private cause of action, *Elliot* cited § 653(b)(4).  This citation is some indication that *Elliot* was calling into question *Pratico*'s analogy between OSHA regulations and other more specific safety statutes.  *Pratico,* 783 F.2d at 267-68; *Elliot,* 134 F.3d at 4.[6]  Alternatively, sometimes a citation is just a citation.

---

[6] *Martin* and *Kelly* addressed violations of Coast Guard rather than OSHA regulations. *Martin,* 2004 U.S. Dist. LEXIS 7722 at *7-*8 ("Accordingly, because the jury's answers to special questions indicated that, in each case, the defendant's violation of Coast Guard regulations contributed to the decedent's death, contributory negligence on the part of the decedent cannot be taken account of to reduce the otherwise available recovery as awarded by the jury"); *Kelly,* 281 F.Supp.2d at 317 ("Question two in the special verdict form asked the jury to determine by a preponderance of the evidence if Keystone breached a Coast Guard regulation by a practice or company policy.  They answered affirmatively").

At the least, the two issues, negligence per se and comparative negligence, appear by the First Circuit's own analysis to be intertwined. *See Pratico,* 783 F.2d at 268 ("the legislative history of § 53 indicates that Congress considered this elimination of contributory negligence to be simply a reflection of the common law doctrine of negligence per se").[7]   Although less confident that there is a "special justification" for departing from *Pratico* on comparative negligence, especially in light of *Martin* and *Kelly,* this Court concludes that *Elliot*'s "of questionable validity", in light of its analytic underpinnings, likely extends to comparative negligence and for the same reasons will allow Penn Maritime to raise comparative negligence in its defense.   Defendant's motion in limine seeking to preclude the Plaintiff from referring to "negligence per se" or statutory violations is GRANTED.

### c.   Subsequent Remedial Measures and Permissible Scope of Expert Cross-examination

### 1.  Subsequent Remedial Measures

Penn Maritime argues that videos and photographs of the ship's hatch cover being removed and reinstalled are inadmissible pursuant to Fed. R. Evid. 407 as evidence of subsequent remedial modifications.   *Def.'s Mot. in Limine* at 5.   Plaintiff counters by

---

[7] Plaintiff in passing responds by stating that "it is the Plaintiff's position a violation of an applicable OSHA regulation gives rise to the application of the Pennsylvania Rule, that is, the shifting of the burden of proof on the issue of causation".   *Pl.'s Resp. in Opp'n re Def.'s Mot. in Limine Regarding References to Negligence Per Se* at 2.   A hoary maritime rule derived from *The Pennsylvania,* 86 U.S. (19 Wall.) 125 (1847), *overruled in part by United States v. Reliable Transfer Co.,* 421 U.S. 397 (1975), the 'Pennsylvania Rule' states that if a ship at the time of collision is in violation of a statutory rule intended to prevent collisions, there is a presumption that the ship was the cause of the collision.   Before the burden of proof is shifted to the defendant, the plaintiff must show at least some relationship between the regulatory violation and the injury.   *Poulis-Minott v. Smith,* 388 F.3d 354, 364 (1st Cir. 2004).   The rule has been expanded in recent years to cover a wider variety of maritime incidents.   *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 436 (1st Cir. 1992), but the Second Circuit has specifically rejected the sufficiency of relying on generic OSHA violations to meet the standard set by *The Pennsylvania* for the same reasons discussed earlier.   *Jones,* 155 F.3d at 595 ("Imposing negligence per se, shifting the burden of proof and barring a finding of comparative negligence for an OSHA violation would all 'enlarge or diminish or affect in any other manner' the liability of a maritime employer").

stating that the evidence would be offered for the purpose of showing feasibility.  *Pl.'s Resp. in Opp'n re Def.'s Mot. in Limine Regarding Subsequent Remedial Measures* (Docket # 55).

Rule 407 provides that "evidence of…subsequent measures is not admissible to prove negligence, culpable conduct".  Fed. R. Evid. 407.  The rule provides that evidence of subsequent measures need not be excluded if the point is to show feasibility of precautionary measures, if controverted, or for impeachment.  *Id.*  Defendant argues that the impeachment exception has been considered troublesome, and, at any rate, it has not challenged feasibility.  *Def.'s Mot. in Limine* at 6-8.  Plaintiff counters that Defendant suggested at the pretrial conference that it would introduce evidence on feasibility and it refused to stipulate to feasibility, ergo, the evidence should be admitted.  *Pl.'s Resp. in Opp'n re Def.'s Mot. in Limine Regarding Subsequent Remedial Measures* at 1-2.

### 2.  Scope of Expert Cross-Examination

Penn Maritime has requested that Plaintiff be barred, pursuant to Fed. R. Evid. 702 and Fed. R. Civ. P. 26, from questioning defendant's experts about topics beyond their areas of expertise.  *Def.'s Mot. in Limine* at 11.  Specifically, Defendant wishes to ban Dr. Edwin Richter, a rehabilitation expert, from being cross-examined about his view of Mr. Falconer's memory loss.  *Id.*  In response, Plaintiff argues that (a) Dr. Richter is qualified as an expert under Fed. R. Evid. 702; and, (b) his testimony would be "relevant and admissible and should not be barred simply because it conflicts with the opinions of another medical expert retained by the Defendant."  *Pl.'s Resp. in Opp'n re Def.'s Mot. in Limine Regarding Retained Defense Expert Dr. Edwin Richter* at 1 (Docket # 52).

### 3.  Discussion.

Pre-trial argument is not evidence and, since the parties disagree on what the evidence will be, this Court cannot prejudge it.  Regarding remedial measures, Rule 407 is clear.  Regarding expert testimony, the rules of discovery and expert foundation are equally clear.  This Court fully intends to enforce the rules of court, including rule 26 of the rules of civil procedure, and rules of evidence 407 and 702, at trial.  Defendant's motions in limine are DENIED.

## II.      Conclusion

This Court GRANTS Defendant's motions in limine to exclude the contents of the marine casualty report and to preclude the Plaintiff from referring to "negligence per se" or statutory violations.  This Court DENIES Defendant's motions in limine concerning the scope of expert cross-examination and subsequent remedial measures.

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of October, 2005